UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:15-CR-00133-GNS

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.

TOMMY M. SLAUGHTER                                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Objection (DN 28) to the Magistrate Judge Whalin's Findings of Fact, Conclusions of Law, and Recommendations regarding Defendant's Motion to Suppress (DN 27). For the following reasons, the Magistrate Judge's Report and Recommendation is **ADOPTED** and Defendant's Objection is **OVERRULED**.

### I.     BACKGROUND

At approximately 10 p.m. on July 2, 2015, a group of four Louisville Metro Police officers were traveling in an unmarked Ford Explorer. (Suppress Hr'g Tr. 4:3-14; 17:18, 36:13-23, Aug. 10, 2016, DN 22 [hereinafter Hr'g Tr.]). The officers were travelling southward on 19th Street when Detectives Jason Haywood ("Haywood") and Tony Benzing ("Benzing") observed a 2002 Chevy Impala waiting behind another vehicle in the drive through line at West Main Street Liquors, located at the corner of 19th Street and West Main Street. (Hr'g Tr. 44:21-45:11). Haywood recalled that although it was growing dark at the time, the area was adequately lit with street lights so the scene was easily observable. (Hr'g Tr. 30:15-19). Additionally, Haywood testified that he was aware of multiple arrests and shootings in the immediate area of the liquor stores, which he characterized as being a "high crime" area. (Hr'g Tr. 31:8-14).

Haywood and Benzing observed what appeared to be a hand-to-hand transaction occurring through the passenger window of the vehicle, which they suspected to be a drug transaction. (Hr'g Tr. 28:4-11, 37:2-5, 39:4-6). Haywood testified that he observed an individual, later identified as Mr. Scott ("Scott"), having a conversation at the passenger window of the car and observed Scott reach into his pocket and then lean into the vehicle. (Hr'g Tr. 28:4-11). Benzing also watched this occur. (Hr'g Tr. 37:2-5). Both detectives testified that they could not see what—if anything—was in Scott's hand when he pulled it from his pocket. (Hr'g Tr. 28:4-11, 45:17-20).

The officers then activated the unmarked vehicle's police lights, performed a U-turn, and parked "[r]ight on the side of the car, kind of behind it . . . ." (Hr'g Tr. 7:14-19, 34:1-7). Haywood and Benzing quickly jumped out and approached the vehicle's passenger side window while another officer began to pat down Scott. (Hr'g Tr. 7:21-24). Defendant was seated in the passenger seat and had his right hand inside of his right pants pocket. (Hr'g Tr. 37:13-15). Benzing greeted Defendant and then asked him to remove his hand from his pocket. (Hr'g Tr. 22:8-14, 37:23-25). Defendant neither responded to the request nor removed his hand from his pants pocket. (Hr'g Tr. 39:21-22). Haywood stated that Defendant's only reaction was to look over to the female driver with a discouraged look on his face. (Hr'g Tr. 23:4-9). Benzing asked Defendant twice more to remove his hand. (Hr'g Tr. 39:13-20). Finally, Benzing reached into the vehicle and placed his hand on top of Defendant's right wrist. (Hr'g Tr. 37:23-38:2). Benzing felt the shape of a handgun in Defendant's pockets and alerted the other officers that Defendant was armed. (Hr'g Tr. 24:12-14, 26:22-23, 38:1-2). At that point, Defendant removed his hand from his pocket while Benzing took control of it. (Hr'g Tr. 22:24-23:6, 38:7-12).

Benzing and Haywood removed Defendant from the vehicle. (Hr'g Tr. 38:7-12). Benzing reached into Defendant's right pocket and pulled out a loaded .22 caliber Beretta handgun. (Hr'g Tr. 22:23-24, 38:7-12). Defendant's hands were then placed behind his back while Detective Haywood performed a pat down search. (Hr'g Tr. 31:15-19). The pat down search revealed three bindles of narcotics from the interior change pocket of Defendant's pants located within the same pocket where the gun was found. (Hr'g Tr. 22:25-23:3). Defendant was charged with the knowing and intentional possession of both cocaine and heroin with the intent to distribute the same in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Indictment 2-3, DN 1). Additionally, Defendant was charged with the knowing possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). (Indictment 2).

On April 4, 2016, Defendant moved to suppress evidence obtained as a result of the illegal stop and subsequent warrantless search of his person. (Def.'s Mot. Suppress, DN 15). Following an evidentiary hearing, the Magistrate Judge found that facts supporting reasonable suspicion of wrongdoing did exist in order to support the legality of the seizure of Defendant. (Findings of Fact, Conclusions of Law & Recommendation, DN 25 [hereinafter "R&R"]). Defendant objects to the R&R's conclusion that reasonable suspicion existed for the warrantless seizure. (Def.'s Objs. to R. & R., DN 28 [hereinafter Def.'s Obj.]). This matter is ripe for adjudication.

## II. STANDARD OF REVIEW

In *United States v. Curtis*, 237 F.3d 598 (6th Cir. 2001), the Sixth Circuit articulated the proper standard of review for objections to a ruling or recommendation by a magistrate judge, stating:

> [Section] 636(b) creates two different standards of review for district courts when a magistrate court's finding is challenged in district court. A district court shall

3

> apply a "clearly erroneous or contrary to law" standard of review for the "nondispositive" preliminary measures of § 636(b)(1)(A). Conversely, "dispositive motions" excepted from § 636(b)(1)(A), such as motions for summary judgment or *for the suppression of evidence*, are governed by the *de novo* standard.

*Id.* at 603 (emphasis added) (citations omitted). Thus, the *de novo* standard applies to the present review.

### III. DISCUSSION

In the R&R, the Magistrate Judge recommends that the motion to suppress be denied because reasonable suspicion existed to support the constitutionality of the warrantless seizure of the Defendant. The Magistrate Judge bases his finding of reasonable suspicion on the following facts: an observed hand-to-hand transaction between Defendant and Scott, the time of day, the presence of the suspicious activity in a high crime area, and the fact that Defendant would not comply with the officer's commands to remove his hand from his pocket. Defendant objects to the Magistrate's finding of reasonable suspicion. More specifically, Defendant notes that the Magistrate Judge incorrectly characterized the hand-to-hand transaction that the officers observed as a *drug* transaction and contests the characterization of the area as a high crime area. (Def.'s Obj. 1-3).

In accordance with *Terry v. Ohio*, 392 U.S. 1 (1968), a warrantless stop for questioning is reasonable if "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion . . . ." *United States v. Vite-Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003) (quoting *Terry*, 392 U.S. at 21-22). Thus, for the *Terry* stop of Defendant to be lawful, the law enforcement officers must have a reasonable suspicion of criminal activity at the time when the police car parked behind the vehicle in which Defendant was riding. *See United States v. Jones*, 673 F.3d 497, 501 (6th Cir. 2012) (noting that reasonable

4

suspicion is to be determined at the time of the seizure).[1] The fundamental inquiry when analyzing the constitutionality of a Terry stop is whether officers "have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Assessing whether an officer possesses particularized, objective suspicion requires a two-fold analysis. *Id*. at 418. First, a court "must look at the 'totality of the circumstances' of [the] case . . . ." *United States v. Arvizu*, 534 U.S. 266, 273

---

[1] This Court finds that Defendant was seized prior to the officer approaching his vehicle and noticing Defendant's hand in his pocket. The Supreme Court held that a seizure occurs when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Here, the record indicates that the vehicle in which Defendant was a passenger was effectively blocked by the officers' unmarked police car. Benzing testified that Defendant's vehicle was waiting in the liquor store drive through behind another car at the time of the incident. (Hr'g Tr. 45:1-7). Detective Haywood testified that the patrol car pulled up, activated its blue lights, and parked "[r]ight on the side of the car, kind of behind it a little bit." (Hr'g Tr. 7:18-19, 34:1-7). *See United States v. Baldwin*, 114 F. App'x 675, 679 (6th Cir. 2004) ("The position of the two police cruisers effectively surrounded and blocked [defendant's] car. . . . Given this configuration of vehicles at the time of the encounter, a reasonable person in [defendant's] situation would not have felt free to leave the area."); *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009) (holding that "the blocking of [the defendant's] car to determine the identity of the occupants and maintain the status quo while obtaining this information was a warrantless Terry seizure . . . [because] a reasonable person in [the defendant's] position would not have felt free to leave."); *United States v. Young*, 707 F.3d 598, 603 (6th Cir. 2012) (holding that a defendant was subject to a Terry stop when a police cruiser parked behind the car in which the defendant sat, presumably blocking in the car in). Moreover, three of the officers immediately exited the vehicle, and the fourth soon followed, one officer performed a pat down of Scott and the two others immediately approached the passenger side window to begin a discussion with Defendant, blocking Defendant's exit from the vehicle. *See Mendenhall*, 446 U.S. at 554 (listing "the threatening presence of several officers, . . . or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" as indications of a seizure); *Young*, 707 F.3d at 603 (holding that the presence of three officers shining flashlights into the car indicated that a reasonable person would not feel free to leave); *Baldwin*, 114 F. App'x at 679 (holding that the presence of two additional officers coupled with the placement of the patrol car amounted to a seizure). Thus, this Court finds that Defendant was subject to a *Terry* stop at the time the police cruiser activated its blue lights and parked beside/behind Defendant, effectively blocking in the car in which Defendant sat. Considering the position of the police vehicle and the presence of multiple officers on the scene, a reasonable person in Defendant's position would not have felt free to leave when the officers pulled up to the scene, thus, reasonable suspicion must have been present at this time.

(2002) (quoting *Cortez*, 449 U.S. at 417–18). Under this "totality of the circumstances" rubric, officers may "draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (citation omitted); *see also Arvizu*, 534 U.S. at 273 (citing *Cortez*, 449 U.S. at 417-18). Second, this assessment must "arouse a reasonable suspicion that the particular person being stopped has committed or is about to commit a crime." *United States v. Montero-Camargo,* 208 F.3d 1122, 1129-30 (6th Cir. 2000) (citing *Cortez*, 449 U.S. at 418).

The Government bears the burden to prove by a preponderance of the evidence the existence of reasonable suspicion, based upon objective and articulable facts, that Defendant was engaged in criminal activity at the time of the warrantless investigative stop. *United States v. Torres-Ramos*, 536 F.3d 542, 552 (6th Cir. 2008). The level of suspicion necessary for a warrantless investigative stop is relatively minimal and "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). A finding of reasonable suspicion requires articulable facts that reasonably suggest that criminal activity "may be afoot," and "[t]he officer . . . must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *Id*. (internal quotation marks omitted) (quoting *Terry*, 392 U.S. at 27). "Further, the collective knowledge of all the law enforcement officers involved in the stop may be taken into consideration when determining whether reasonable suspicion exists." *United States v. Williams*, 650 F. Supp. 2d 633, 653 (W.D. Ky. 2009) (citing *United States v. Miramonted*, 365 F.3d 902, 905 (10th Cir. 2004)). In this case, the officers collectively based their belief of reasonable suspicion on the time of day, the high crime area, and the perceived hand-to-hand transaction observed by the officers. Defendant

objects to the R&R's conclusion that the officers had reasonable suspicion of criminal activity at the time Defendant was subjected to a *Terry* stop. Furthermore, Defendant objects to the portions of the R&R which mislabeled the hand-to-hand transaction as a drug transaction and to the finding of the officers' knowledge that the area was a high crime area.

"Hand-to-hand transactions consistent with drug transactions are 'highly probative' in evaluating reasonable suspicion." *United States v. Alexander*, 528 F. App'x 515, 519 (6th Cir. 2013) (citing *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012)). *See also United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006) (holding that an observation of an apparent hand-to-hand transaction consistent with a drug deal can be used to establish reasonable suspicion); *Irvin v. City of Shaker Heights*, 809 F. Supp. 2d 719, 730 (N.D. Ohio 2011) ("[W]hen a police officer witnesses a hand-to-hand exchange in an area known for drug transactions, the officer has reasonable suspicion to believe that criminal activity is afoot." (citing *United States v. Sweeny*, 402 F. App'x 37 (6th Cir. 2010))). Reasonable suspicion does not require certainty of criminal activity. *See United States v. Flores*, 571 F.3d 541, 545 (6th Cir. 2009) ("[L]aw enforcement officers need not have certainty in order for a suspicion to be reasonable"). "[C]ourts must give due weight to officers' factual inferences in deference to their specialized training, which allows them to make deductions that might well elude an untrained person." *Alexander*, 528 F. App'x at 519 (citing *United States v. Luqman*, 522 F.3d 613, 616 (6th Cir. 2008)) (citation omitted)).

The R&R labels the officers' observation as a hand-to-hand *drug* transaction. Both detectives at the suppression hearing testified, however, that they did not see drugs, or anything, being exchanged, but instead observed hand movements consistent with a hand-to-hand drug transaction. (R&R 13; Hr'g Tr. 28:7-11, 37:2-5, 43:14-16). Defendant emphasizes this fact in urging that reasonable suspicion is lacking, but his argument misses the mark, as a finding of

reasonable suspicion does not require certainty, and the appearance of criminal activity is enough to give rise to reasonable suspicion. *See Flores*, 571 F.3d at 545. Thus, the fact that the detectives did not observe what was handed to Defendant is not determinative. The detectives witnessed Scott reach into his pocket and then place his hand inside of Defendant's car window, actions that lead the detectives to believe a drug transaction was occurring, an activity with which they are familiar through their law enforcement experience. (Hr'g Tr. 29:3-8, 37:2-5, 39:4-6, 43:14-16); *see Paulette*, 457 F.3d at 606 ("[T]he officers had a reasonable suspicion that [the defendant] was engaged in criminal activity based upon his hand movements consistent with drug-dealing activity, efforts to evade the police upon noticing them, and presence in a high crime area." (citation omitted)) Therefore, the hand movements coupled with the fact that Defendant was in a high crime area would support the reasonable belief that criminal activity was occurring and thus, the officers had reasonable suspicion to seize Defendant.

Additionally, Defendant objects to the detectives' characterization of the area in which the hand to hand transaction occurred as a "high crime area." (Def.'s Obj. 2). An area's high crime rate can contribute to reasonable suspicion; however, the mere presence of an individual in an area of frequent criminal activity, "standing alone, is not enough to support a reasonable, particularized suspicion of criminal activity . . . ." *Illinois v. Wardlow*, 528 U.S. 119, 119 (2000) (citing *Adams v. Williams*, 407 U.S. 143, 144 (1972)). "But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Id*. The Sixth Circuit has cautioned as to when to consider an area a high crime area. *United States v. Caruthers*, 458 F.3d 459, 467-68 (6th Cir. 2006) ("'We must be particularly careful to ensure that a 'high crime' area factor is not used with respect to entire neighborhoods or communities in which members of minority groups

regularly go about their daily business, but is limited to specific, circumscribed locations where particular crimes occur with unusual regularity.'" (quoting *Montero-Camargo*, 208 F.3d at 1138)).

Nevertheless, numerous courts have held that where a law enforcement officer has personal knowledge of criminal activity in a certain area through previous law enforcement experience, this will support a finding that the area is in fact a high crime area. *See United States v. Smith*, 594 F.3d 530, 541 (6th Cir. 2010) ("It was reasonable to conclude, based on [the officer's] prior testimony regarding his extensive experience in this area . . . that this was a high-crime area."); *United States v. Bridges*, 626 F. App'x 620, 623 (6th Cir. 2015) ("[The officer's] testimony that the area was 'known' for a 'high' level of criminal activity was sufficient to support the district court's finding that the location of arrest was a high crime area."); *United States v. Pacheco*, No. 16-3376, 2016 WL 6311621, at \*6 (6th Cir. Oct. 28, 2016) (noting that testimony from an officer indicating that an "area was known for its drug trafficking and gun violence" supported that the area was a high crime area). At the suppression hearing, Detective Haywood testified that the area where Defendant's arrest was made is known as a high crime area. (Hr'g Tr. 31:8-14). Specifically, Haywood testified that he had made "[m]ultiple arrests in that area" and there is "high drug activity" in that area. (Hr'g Tr. 31:12-14). Moreover, Haywood testified that he was assigned to patrol the area by his superiors specifically because it was known as a high crime area. (Hr'g Tr. 13:22-14:7).

Defendant objects to the finding that this is a high crime area because Haywood could not explain the criteria that his superiors used to designate a high crime area, and suggests that the officers may do so arbitrarily. (Def.'s Obj. 2). Despite Defendant's emphasis on Haywood's superiors' determination of a high crime area, the Court is satisfied that the officers believed the

9

area to be a high crime area by Haywood's own previous experience of crime in that area, including multiple arrests. Although mere presence in a high crime area standing alone is not enough to give rise to reasonable suspicion, the addition of the facts that the incident occurred at night and the officers observed suspicious behavior consistent with a hand-to-hand drug transaction, the Court finds that the officers had reasonable suspicion to perform a *Terry* stop of Defendant at the time of the search. Thus, the Magistrate Judge's denial of Defendant's motion to suppress is affirmed.

### A. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED AND ADJUDICATED** that the Findings of Fact, Conclusions of Law and Recommendation of the United States Magistrate Judge (DN 25) are **ADOPTED** and Defendant's Objections (DN 28) are **OVERRULED.**

**Greg N. Stivers, Judge**
**United States District Court**
January 4, 2017

cc: counsel of record