UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:15-CR-133-GNS

UNITED STATES OF AMERICA              PLAINTIFF

v.

TOMMY M. SLAUGHTER                DEFENDANT

**MEMORANDUM OPINION & ORDER**

This matter is before the Court upon Defendant's Motion for New Trial (DN 73). For the reasons discussed below, the motion is **DENIED**.

### I. BACKGROUND

Defendant Tommy Slaughter ("Slaughter") was indicted on three counts: (1) knowingly and intentionally possessing with intent to distribute a mixture or substance containing a detectable amount of cocaine; (2) knowingly and intentionally possessing with intent to distribute a mixture or substance containing a detectable amount of heroin; and (3) knowingly possessing a firearm as a felon. (Indictment 1-2, DN 1). A jury was impaneled to hear the case on June 27, 2017. (Order 1, DN 71). The next day, after the close of testimony, the jury returned a unanimous guilty verdict as to Count 1 (lesser included offense of possession of controlled substance, Count 2 (lesser included offense of possession of controlled substance), and Count 3. (Jury Verdict, DN 69). Now, Slaughter moves for a new trial. (Def.'s Mot. New Trial, DN 73). The United States has responded, and Slaughter has replied. The matter is ripe for decision.

## II.     STANDARD OF REVIEW

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). As the Sixth Circuit has noted, "[t]he rule 'does not define interest[] of justice' and the courts have had little success in trying to generalize its meaning.'" *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (internal quotation marks omitted) (alteration in original) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)). However, "it is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *Id.* (citations omitted) (surveying authorities); *see also Kuzniar*, 881 F.2d at 470 ("Courts have interpreted [Rule 33] to require a new trial 'in the interest[] of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." (citation omitted)). Generally, "any error of sufficient magnitude to require reversal on appeal is an adequate ground for grating [a] new trial." *United States v. Smallwood*, No. 5:08-CR-00038-TBR, 2012 U.S Dist. LEXIS 175686, at *3 (W.D. Ky. Dec. 11, 2012) (internal quotation marks omitted) (quoting *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004)).

It is the defendant's burden to prove that a new trial should be granted. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991); 3 Charles Alan Wright, et al., *Federal Practice and Procedure* § 581 (4th ed., rev'd 2017) ("A motion for a new trial is based on the presumption that the verdict against the defendant is valid; therefore the burden is on the defendant to demonstrate that a new trial ought to be granted."). The decision to grant or deny such a motion "rests within the district court's sound discretion", and "new trial motions are disfavored and should be granted with caution." *Seago*, 930 F.2d at 488; *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001) (citation omitted).

## III. DISCUSSION

Slaughter argues that the Court's denial of his pre-trial motion to suppress and pretrial motion to dismiss Count 3, as well as its refusal to tender his theory-of-defense instruction to the jury, were errors that entitle him to a new trial. Each argument is addressed in turn.

### A. Motion to Suppress

Slaughter asks the Court to "reconsider and reverse" its pre-trial order denying Slaughter's motion to suppress for two reasons. (Def.'s Mot. New Trial 3). First, "[s]ince the testimony and evidence at the suppression hearing, as well as at trial (plus jury verdicts), demonstrated a narcotic transaction never occurred," the officers did not have reasonable suspicion to conduct a *Terry* stop-and-frisk of Slaughter. (Def.'s Mot. New Trial 3). Second, the "new, altered" testimony of Officer Benzing takes this case outside of *Terry*; Officer Benzing actually conducted a "full-blown custodial arrest" of Slaughter, which arrest was "legally unjustified" and "lacking in probable case." (Def.'s Mot. New Trial 3-4). More particularly, Slaughter explains that, at the suppression hearing, Officer Benzing "endeavored to describe suspicious activity that [he] though or believed may or may not have been a hand-to-hand narcotics transaction in a high-crime rea of Louisville," but never testified that he "saw a crime committed." (Def.'s Mot. New Trial 2). To the contrary, Slaughter avers, Officer Benzing at trial "repeatedly claimed to have witnessed a narcotics transaction" and admitted that, as a result, he conducted "a full-blown custodial arrest" of Slaughter. (Def.'s Mot. New Trial 3).

The Court declines to reverse its prior order. After a hearing on Slaughter's motion to suppress, the Magistrate Judge issued a report and recommendation in which he found that the officers had reasonable suspicion to conduct a *Terry* stop-and-frisk of Slaughter. (R. & R., DN 27). The Court adopted the Magistrate Judge's recommendation and explained its reasons for

3

doing so. (Mem. Op. & Order, DN 29). There is no need to rehash that analysis here. Furthermore, contrary to Slaughter's argument otherwise, Officer Benzing's testimony at trial mirrored his testimony at the suppression hearing. In both instances, Officer Benzing testified that the group of officers he, and the squad he was patrolling with, effected the stop because, based on the circumstances and his experience as a police officer, he saw what he believed to be a hand-to-hand narcotics transaction.

### B. **Motion to Dismiss**

A defendant may move before trial to dismiss an indictment or any count of it that "fail[s] to state an offense . . . ." Fed. R. Crim. P. 12(b)(3)(B)(V). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

Count 3 of the Indictment charged as follows:

On or about July 2, 2015, in the Western District of Kentucky, Jefferson County, Kentucky, Tommy M. Slaughter, defendant herein, being a person who had been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, that is,

> On or about January 13, 2011, Tommy M. Slaughter, was convicted in Jefferson Circuit Court, Louisville, Kentucky, in Case Number 10-CR-1926, of Burglary II (8 counts), of Burglary III (2 counts) of Theft by Unlawful Taking 0/500 (3 counts); and in Case Number 10-CR-1298, of Burglary II, of Theft by Unlawful Taking 0/500, and of Receiving Stolen Property 0/500,

knowingly possessed, in and affecting commerce, a firearm, that is a, a Beretta, Model 21A, .22 caliber pistol bearing serial number BAS40737. In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e).

4

(Indictment 2). Before trial, Slaughter moved under Fed. R. Crim. P. 12(b)(3)(B)(v) to dismiss Count 3. (Def.'s Mot. Dismiss, DN 42). Slaughter did not argue that the Indictment failed to adequately state the requirements of 18 U.S.C. § 922(g)(1) or 18 U.S.C. § 924(a)(2). Rather, he argued that Count 3 failed to state an offense because, while it charges him with violation of 18 U.S.C. § 922(e), the Armed Career Criminal Act ("ACCA"), none of his prior convictions, as alleged in the Indictment, qualify as ACCA predicates. The Court denied this motion. (Order 1, DN 51). In support of his motion for a new trial, Slaughter repeats the same argument.

The Court stands by its prior ruling. The ACCA enhances the sentences of defendants who are convicted of violating 18 U.S.C. § 922(g)(1) and have "three previous convictions by any court . . . for a violent felony or serious drug offense, or both, committed on occasions different from one another . . . ." *United States v. Brewer*, 853 F.2d 1319, 1322-26 (6th Cir. 1988); 18 U.S.C § 924(e)(1). Because the ACCA is a sentencing enhancement, and not a separate offense, the government is not required to charge such prior convictions in the indictment or prove them at trial. *Brewer*, 853 F.2d at 1322 (6th Cir. 1988) ( "Congress did not intend the ACCA to create a separate offense mandating the government to specifically plead in its indictment and prove at the trial in chief the recidivism that triggers the enhanced sentencing statute . . . ."). Likewise, in this case, there was, and is, no basis to dismiss Count 3 for failure to state an offense on the ground that it may have failed to adequately allege Slaughter had three prior felony convictions that qualified as predicate offenses under the ACCA. At worst, the Indictment's reference to the ACCA is "surplusage."[1] *See United States v. Johnson*, 704 F. Supp. 1403, 1404-05 (E.D. Mich. 1989) (citing Fed. R. Crim P. 7(d)).

---

[1] At this time, the Court expresses no opinion on whether the ACCA enhancement applies in this case. The parties are free to address this in their pre-sentencing filings.

### C. Theory-of-Defense Instruction

The Court declined to instruct the jury on Slaughter's "innocent possession" defense. Slaughter's proposed instruction stated as follows:

> It is Tommy Slaughter's defense to Count Three that: (1) the Berretta .22 caliber pistol was attained innocently and held with no illicit purpose and (2) his possession of it was transitory; that is, momentary and impermanent, and that Tommy Slaughter took measures to rid himself of the firearm as promptly as possible. If you find that Tommy Slaughter attained innocent possession with no illicit purpose and that his possession of the Berretta was transitory, you must find him not guilty . . . .

(Proposed Jury Instructions 3, DN 64). Slaughter argues that the Court erred in refusing to tender this instruction to the jury because the facts supported it.

Slaughter misses the point. The Court did not refuse to give Slaughter's proposed instruction because it was unsupported by the record; it refused to give the instruction because the defense upon which it was based does not exist in the Sixth Circuit. His proposed instruction was based on the holding of *United States v. Mason*, 233 F.3d 619 (D.C. Cir. 2000). In *Mason*, the D.C. Circuit recognized an innocent possession defense to a 18 U.S.C. § 922(g)(1) charge. *Id.* at 623-24. It explained that "[t]here are two general requirements that must be satisfied in order for a defendant to successfully invoke" the defense:

> The record must reveal that (1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory—i.e., in light of the circumstances presented, there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible."

*Id.* at 624. Unfortunately for Slaughter, we are not in the D.C. Circuit, and while the Sixth Circuit has recognized that a "justification defense" to a Section 922(g)(1) charge "may arise in rare situations[,]" *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990), the requirements

of that defense are not the same as those articulated by the *Mason* court. Rather, the defense is "construed very narrowly[,]" and the defendant must show:

> (1) that [he] was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury";
> (2) that he had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct];
> (3) that defendant had no "reasonable legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm'"; and
> (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm."

*Singleton*, 902 F.2d at 472-73 (alterations in original) (internal citations omitted). Slaughter never argued that the record supported an instruction based on *Singleton* and, in any event, the evidence presented at trial would not have supported one.

Slaughter states in his motion for a new trial that "[c]iting *Matthews v. United States*, 485 U.S. 58 (1988) and the several other federal circuits that follow *Matthews*, the defense urged that the facts supported his defense." (Def.'s Mot. New Trial 7). Two things: First, *Matthews* is a U.S. Supreme Court case, so all federal circuits follow it. Second, the question presented in *Matthews* was "whether a defendant in a federal criminal prosecution who denies commission of the crime may nonetheless have the jury instructed, where the evidence warrants, on the affirmative defense of entrapment." *Matthews*, 485 U.S. at 59. In answering that question in the affirmative, the Court stated "[a]s a general proposition, a defendant is entitled to an instruction as to any *recognized* defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Id.* at 63. (emphasis added). As explained above, however, the defense articulated by *Mason* has not been recognized by the Sixth Circuit. Moreover, that defense has been expressly rejected by the First, Fourth, Seventh, Ninth, and Tenth Circuits. *See United States v. Teemer*, 394 F.3d 59, 64 (1st Cir. 2005); *United States v. Gilbert*, 430 F.3d 215, 220

7

(4th Cir. 2005); *United States v. Hendricks*, 319 F.3d 993, 1007 (7th Cir. 2003); *United States v. Johnson*, 459 F.3d 990, 998 (9th Cir. 2006); *United States v. Baker*, 508 F.3d 1321, 1325 (10th Cir. 2007).

Finally, Slaughter explains, "[t]he consistent testimony of Tommy Slaughter and Jessica Maddox establish that the defendant did not intentionally nor purposefully possess a firearm. Rather, it was hurriedly thrust upon him by Diontray Scott to evade Scott's arrest." (Def.'s Mot. New Trial 6). To the extent Slaughter suggests that the Court did not instruct the jury that they had to find Slaughter's possession of the Beretta voluntary and intentional to convict on Count 3, he is incorrect. The jury instructions specifically provided that "[t]he term 'knowingly means voluntarily and intentionally, and not because of mistake or accident." (Jury Instructions 20, DN 68). Accordingly, Defendant's motion is without merit.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for New Trial (DN 73) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**
September 27, 2017

cc: counsel of record